## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **LISA J. NORWOOD,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. H-04-2018** |
| | § | |
| **CALPINE CORPORATION, et al.,** | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM & ORDER

Pending before the Court is the Motion for Summary Judgment (Dkt. #16) of the Defendants Calpine Corporation, Calpine Central, L.P., and Calpine Energy Services, L.P. (collectively, "Defendants" or "Calpine"). Also pending before the Court is the Defendants' Motion to Strike Exhibits (Dkt. #20). For the reasons discussed below, the motion to strike is denied and the motion for summary judgment is granted in part and denied in part.

### Factual and Procedural Background

This case is an employment discrimination proceeding. Plaintiff, Lisa J. Norwood, claims that Defendants violated her rights secured by Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, and the Pregnancy Discrimination Act of 1978 (collectively "Title VII"); were negligent; and committed intentional infliction of emotional distress. Plaintiff was hired by Defendants as a Fuels Acquisition Manager on March 1, 2000. The fuels acquisition group is responsible for assuring that Defendants' power plants throughout the United States have a reliable source of fuel supply. Initially, Plaintiff was primarily responsible for those power plants in the upper Midwest. As part of a reorganization of the fuels acquisition group, the Plaintiff was promoted to Director of Fuels Acquisition in August 2001. In this position, Plaintiff had supervisory responsibility over several fuels managers and became responsible for the Central region, covering

power plants and fuel acquisition in the Midwest, as well as the area from Texas across Alabama. Initially, Plaintiff was responsible for supervising two male employees, Michael Mellen ("Mellen") and Allen Teetsov ("Teetsov").  In November 2001, Michael Elias ("Elias") also began reporting to Plaintiff.  Mellen was responsible for power plants in Louisiana, Teetsov was responsible for plants in the upper Midwest, and Elias was responsible for plants in Texas.  Plaintiff's primary responsibility was to supervise all three men, however, she also had some specific power plant assignments.

In late 2001, the fall of Enron Corp. had a damaging effect upon the entire energy industry, including the Defendants.  The Defendants' stock price, which had reached the mid-$50s in the Summer of 2001, fell to less than $10 per share in the early part of 2002.  As a result of these economic conditions, Defendants attempted to streamline their operations and eliminated certain positions.  In the Spring of 2002, Plaintiff's supervisor asked her to eliminate one position in her group in an effort to cut costs.  As a result, Teetsov was let go and Plaintiff once again assumed primary fuel acquisition responsibilities for the upper Midwest area of the United States.  In August 2002, Plaintiff was once again was asked to reduce the staff in her group.  Plaintiff chose to eliminate Mellen rather than Elias because Mellen's experience overlapped with hers and she was primarily responsible for his area prior to his joining the group.  Plaintiff's supervisors approved her decision.  Plaintiff once again took over responsibility for the plants in Louisiana and parts of the Southeast.  Despite the elimination of his position, Mellen was offered a lower paying position as a gas scheduler.

In November 2002, Defendants again reorganized.  Defendants made the decision to flatten the organizational structure in the fuels acquisitions group and have all employees report directly to one person.  Elias, the only remaining employee who had reported to Plaintiff, now reported to

Jeff Rawls ("Rawls"), Vice President, Producer Services.  Accordingly, the supervisory roles of the directors in the Western, Eastern, and Central were eliminated.  Plaintiff lost her supervisory role along with two male employees, Mike Pettit and Colin Coe.  During this same period, Plaintiff advised Rawls that she was pregnant.

That next month, in December 2002, Defendants determined that the activity in the Southeastern part of the United States, particularly Florida, required additional fuel management resources.  Rawls offered the position to provide fuel acquisition support services to Mellen, who returned to the fuels group and was given an increase in pay of $15,700.[1]  Plaintiff asserts that the majority of Mellen's job duties came from work that was already being performed by the Plaintiff.

Although Plaintiff continued to perform her job well, she began to feel that her job was in jeopardy after she became pregnant.  Her feelings were based in part on the shift of many of her responsibilities to Mellen, her exclusion from meetings by upper management, and her suspicion that her co-workers were withholding important information from her.  In January 2003, Rawls resigned and the employees that formerly reported to Rawls now reported to Paul Posoli ("Posoli"), Senior Vice President.  Plaintiff continued to work under Posoli until she gave birth on February 7, 2003 and went on maternity leave.

In March 2003, Defendants underwent yet another general staff reduction and decided to eliminate Plaintiff's position.  At this time there were three employees in the fuels acquisition group's Houston office, Plaintiff, Elias, and Mellen.  Posoli determined that the task of acquiring fuel for the Defendants' fleet could be accomplished with just two individuals in the Houston office.

---

[1] This figure was noted in Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment ("Response").  In support of this figure, Plaintiff refers the Court to Exhibit 3, attached to her Response, which is represented to be a "Calpine personnel action form." Though the court is not sure how Plaintiff reached the figure of $15,700, the Defendants do not dispute the amount of Mellen's pay increase.

On March 19, 2003, Defendants' Human Resources Director, Mark Dickson, contacted the Plaintiff by telephone advising her that her job was being eliminated.  At the time she was notified, Plaintiff was still on maternity leave pursuant to the  Family Medical Leave Act and was also still on short term disability leave as provided by Defendants' polices.  Plaintiff alleges that, unlike Mr. Mellen, Plaintiff was not offered a transfer to another position in the company nor was she advised of any openings in other departments.

Plaintiff filed the instant lawsuit on May 20, 2004.  Defendants have moved for summary judgment on all of Plaintiff's claims.

## Summary Judgment Standard

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c); *see also Christopher Village, LP v. Retsinas*, 190 F.3d 310, 314 (5th Cir. 1999).  The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment, there must be an absence of any genuine issue of material fact.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  An issue is "material" if its resolution could affect the outcome of the action.  *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001), *cert. denied*, 122 S. Ct. 347 (2001).

The moving party bears the initial burden of informing the court of all evidence demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine issue of material fact.  *Id*. at 322.  If the moving party fails to meet this burden, then they are not entitled to a summary judgment and

no defense to the motion is required.  *Id.*

"For any matter on which the non-movant would bear the burden of proof at trial . . . , the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718-19 (5th Cir. 1995); *see also Celotex*, 477 U.S. at 323-25.  To prevent summary judgment, the non-movant must "respond by setting forth specific facts" that indicate a genuine issue of material fact.  *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 505 (5th Cir. 1999).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in favor of the non-movant.  *See Yaquinto v. Segerstrom* (*In re Segerstrom*), 247 F.3d 218, 223 (5th Cir. 2001); *see also Samuel v. Holmes*, 138 F.3d 173, 176 (5th Cir. 1998).  The court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence, disregard all evidence favorable to the moving party that the jury is not required to believe, and give credence to the evidence favoring the nonmoving party as well as to the evidence supporting the moving party that is uncontradicted and unimpeached.  *Willis v. Moore Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000).  However, the non-movant cannot avoid summary judgment simply by presenting "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *See TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

## Discussion

### I.        Defendants' Motion to Strike Exhibits

Defendants have moved to strike Plaintiff's Exhibits 3-8, attached to Plaintiff's Response

in Opposition to Defendants' motion for summary judgment ("Response") on the ground that

they are unauthenticated and thus do not constitute competent summary judgment evidence

under FED. R. CIV. P. 56(e).  Defendants argument is meritless.  Plaintiff's Response clearly

included an affidavit from Plaintiff's counsel indicating the source of the attached documents

and verifying that Exhibits 1-8 were all true and correct copies of those documents.  Thus,

Defendants' Motion to Strike Exhibits is denied.

**II.     Defendants' Motion for Summary Judgment**

    **A.     Title VII and Pregnancy Discrimination Act Claim**

        **1.     Standard**

As amended by the Pregnancy Discrimination Act of 1978, Title VII of the Civil Rights

Act of 1964, defines the term "because of sex" as including, but not limited to, "because of or on

the basis of pregnancy, childbirth, or related medical conditions."  42 U.S.C. § 2000e(k).  The

familiar burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792

(1973), generally governs a plaintiff's claims for unlawful discrimination under Title VII.  *See*

*Rubinstein v. Admin. of Tulane Educ. Fund*, 218 F.3d 392, 399 (5th Cir. 2000).  Under this

framework:

> the plaintiff bears the burden of establishing a prima facie case of discrimination;
> upon such a showing, the burden shifts to the defendant to articulate some
> legitimate, non-discriminatory reason for the challenged employment action; if
> such a showing is made, then the burden shifts back to the plaintiff to demonstrate
> that the articulated reason was merely a pretext to unlawful discrimination.

*Id.* (citing *McDonnell Douglas Corp.*, 411 U.S. at 802-04).

Generally, a plaintiff may establish her prima facie case by showing that (1) she is a

member of a protected class; (2) she was qualified for the position at issue; (3) she was subjected

to an adverse employment decision; and that (4) she was either replaced by someone outside the

protected class, or in the case of disparate treatment, that others similarly situated but not in her protected class were treated more favorably.  *See Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512-13.  (5th Cir. 2001).

In the context of a reduction in force, as in the instant matter, the prima facie standard is slightly different.  Here, a plaintiff must still produce prima facie evidence that: (1) she was a member of a protected class; (2) she was qualified for the position or benefit she sought; and (3) she suffered an adverse employment action.  A plaintiff, however, must also produce evidence, either circumstantial or direct, from which a fact finder might reasonably conclude that the employer intended to discriminate against her in reaching its decision to terminate her. *Woodhouse v. Magnolia Hosp.*, 92 F.3d 248, 252 (5th Cir. 1996) (*citing Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996).  "[To] establish a prima facie case, a plaintiff need only make a very minimal showing." *Nichols*, 81 F.3d at 41 (*quoting Thornbrough v. Columbus & Greenville R.R. Co.*, 760 F.2d 633, 639 (5th Cir. 1985)).

If the plaintiff establishes a prima facie case of discrimination, the defendant must "articulate a legitimate, non-discriminatory reason for its decision." *Rachid v. Jack in The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004).  If the defendant satisfies this limited burden, "the plaintiff must then offer sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic (mixed-motive[s] alternative)." *Id.* (internal quotations and citations omitted).

The plaintiff may establish pretext either through evidence of discriminatory motive or by showing that the employer's proffered explanation is false or "unworthy of credence."

*Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001).  "Evidence demonstrating

the falsity of the defendant's explanation, taken together with the prima facie case, is likely to

support an inference of discrimination even without further evidence of a defendant's true

motive."  *Sandstad v. CB Richard Ellis,* 309 F.3d 893, 897 (5th Cir. 2002) (citing *Reeves v.*

*Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147-48 (2000)); *see also Palasota v. Haggar*

*Clothing Co.*, 342 F.2d 569, 576 (5th Cir. 2003) (holding that "the establishment of a prima facie

case and evidence casting doubt on the veracity of the employer's explanation is sufficient to

find liability").[2]

### 2.    Pretext

 Defendants do not dispute the fact that Plaintiff has established a prima facie case of

discrimination.  Defendants' only argument is that they are entitled to judgment as a matter of

law because Plaintiff cannot establish that their legitimate, non-discriminatory reason for

terminating her position was pretextual.  The explanation proffered by Defendants is that there

was an economic downturn which forced them to reduce their workforce and streamline their

operations.

Reduction of work force is a legitimate non-discriminatory reason for termination.

*EEOC v. Texas Instruments*, 100 F.3d 1173, 1181 (5th Cir. 1996).  Thus, the burden shifts to

Plaintiff to demonstrate that this reason is either false/unworthy of credence or that, while true, is

only one of the reasons for the Defendants' conduct, and another 'motivating factor' is Plaintiff's

---

[2] The Fifth Circuit has cautioned that instances may exist, although rare, where a showing
of pretext would not be sufficient to infer discrimination.  *See Russell v. McKinney Hospital
Venture*, 235 F.3d 219, 223 (5th Cir. 2000).  Such an instance would occur "if the record
conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the
plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and
there was abundant and uncontroverted independent evidence that no discrimination occurred."
*Id*. (citing *Reeves*, 530 U.S. at 148).

protected characteristics.  Plaintiff has argued that the Defendants' proffered non-discriminatory reason for her termination is pretextual.  Under a pretext analysis, Plaintiff can survive summary judgment by producing evidence that creates a genuine factual issue as to the falsity of the Defendants' proffered legitimate non-discriminatory reason for their decision.

The law in the Fifth Circuit is that "Title VII . . . do[es] not protect against unfair business decisions[,] only against decisions motivated by unlawful animus." *Turner v. Texas Instruments, Inc.*, 555 F.2d 1251, 1257 (5th Cir. 1977), *overruled on other grounds by Burdine v. Texas Dept. of Community Affairs*, 647 F.2d 513 (5th Cir. 1981).  The Fifth Circuit has cautioned that courts should hesitate before interfering with an employer's decisions regarding promotion. *See Odom v. Frank,* 3 F.3d 839, 847 (5th Cir. 1993); *see also Scott v. Univ. of Miss.*, 148 F.3d 493, 510 (5th Cir. 1998) ("Disagreements over which applicant is more qualified are employment decisions in which we will not engage in the practice of second guessing."), *abrogated on other grounds by Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 120 S. Ct. 631 (2000).

In the failure to promote context, the Fifth Circuit has noted:

> We . . . recognize that subjectivity has a potentiality for abuse by those evaluators who would use it to shield improprieties in the selection process, possibly even as a pretext for discrimination. On the other hand, as a general rule judges are not as well suited by training or experience to evaluate qualifications for high level promotion in other disciplines as are those persons who have trained and worked for years in the field of endeavor for which the applicants under consideration are being evaluated. . . .
> Therefore, unless disparities in curricula vitae are so apparent as virtually to jump off the page and slap us in the face, we judges should be reluctant to substitute our views for those of the individuals charged with the evaluation duty by virtue of their own years of experience and expertise in the field in question.

*Odom,* 3 F.3d at 847 (5th Cir. 1993).  The court believes the same reasoning should apply in the instant case.  Selecting employees to terminate pursuant to a reduction in work force is similar to the choice that must be made when selecting employees for promotion.

The Fifth Circuit has stated in the reduction in work force context that "'[t]he ADEA was not intended to be a vehicle for judicial second guessing of business decisions, nor was it intended to transform the courts into personnel managers.'" *Walther v. Lone Star Gas Co.*, 952 F.2d 119, 123 (5th Cir.1992) (quoting *Thornbrough v. Columbus & Greenville R.R. Co.*, 760 F.2d 633, 647 (5th Cir. 1985)).  An employer is entitled to make those decisions for itself.  *Id.* The same reasoning applies here.

Evidence that a worker outside a protected class was retained instead of a worker in a protected class creates a fact issue only when the discharged plaintiff can show that she was "clearly better qualified" for the position at issue.  *See Bodenheimer v. PPG Industries, Inc.*, 5 F.3d 955, 959 (5th Cir. 1993) (quoting *Walther*, 952 F.2d at 123 (5th Cir. 1992)).  However, "the bar is set high for this kind of evidence because differences in qualifications are generally not probative evidence of discrimination unless those disparities are 'of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.'"  *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 357 (5th Cir. 2001) (quoting *Deines v. Texas Dept. of Prot. & Regulatory Servs.*, 164 F.3d 277, 280-81 (5th Cir. 1999)).  Thus, "[i]n order to establish pretext by showing the losing candidate has superior qualifications, the losing candidate's qualifications must 'leap from the record and cry out to all who would listen that he was vastly–or even clearly–more qualified for the subject job.'"  *Price v. Federal Express Corp.*, 283 F.3d 715, 723 (5th Cir. 2002) (quoting *Odom*, 3 F.3d at 847).

In support of her argument that the Defendants' proffered explanation is pretextual, the Court understands Plaintiff to make three arguments: (1) Defendants were not suffering from "worsening economic conditions;" (2) Defendant's assertion that Plaintiff's region of

responsibility, the Midwest, was the least active of all the regions is unworthy of credence; and (3) she was clearly better qualified than Mellen who was not selected for lay off.  The Court will address each argument in turn.

### a.      Alleged "Worsening Economic Conditions"

Plaintiff appears to argue that Defendants' assertion that the reduction in force occurring in March of 2003 was due to "worsening economic conditions" is unworthy of credence.  First, Plaintiff asserts that though Defendants determined that the work of the fuels acquisition group in Houston could be accomplished by two rather than three employees, just two-and-half months earlier Defendants felt it was necessary to increase the Houston fuels acquisition group as evidenced by giving Mellen a position in that group with a pay increase.  Plaintiff maintains that it is inconsistent to increase personnel costs while at the same time professing economic decline and the need to cut personnel costs.  Second, and in apparent contradiction of her own argument, Plaintiff argues that though Defendants maintain that Mellen was needed in December 2002 because of increased activity in the Southeast, specifically Florida, Plaintiff was required to relinquish her job responsibilities for plants in Louisiana, Alabama, and Mississippi to Mellen in order to give him enough to do.  From this, Plaintiff asserts that if there was such a pressing need for an additional fuels manager in December 2002, such that an eliminated position was resurrected, then there should have been enough work for Mellen to do without taking responsibilities away from others.

The Court notes that the pattern of restructuring and terminations initiated by the Defendants evinces a response to worsening economic conditions and at the very least clearly reflects the Defendants' desire to reduce operating costs.  This is true despite Plaintiff's assertion that Defendants purchased a major asset in the Midwest shortly after she was laid off and later

purchased an interest in at least one other plant in the Midwest.  Nonetheless, a decision to hire a replacement employee during a reduction in force may, in conjunction with other evidence, establish an inference of an improper motive.  *Cf., Olivera v. Nestle Puerto Rico, Inc.*, 922 F.2d 43, 49 (1st Cir. 1990).  Plaintiff, however, has not adduced sufficient evidence to support such an inference.  Based on the economic and organizational conditions existing in the Spring of 2002 and continuing into March 2003, Defendants legitimately identified redundancies in the fuels acquisition groups and decided to consolidate by eliminating a number of positions.  Simply because Defendants determined that increased activity in the Southeast necessitated the rehiring of a previously terminated employee in the midst of job cuts does not in and of itself cast any doubt on the economic necessity of the original decision to reduce their workforce.[3]  Other than the purchase of some interests and pure speculation, Plaintiff has not produced any evidence or argument to suggest that the cuts were not economically necessary.  *Cf. Palmer v. Readers Digest Ass'n, Inc.*, 1992 WL 73468, *6 (S.D.N.Y. Apr. 1, 1992).

> **b.     Activity Level in Plaintiff's Region of Responsibility**

Plaintiff next challenges Defendants' assertion that Mellen was the logical choice for retention because the area he was responsible for, the Southeast, was having increased activity.  Plaintiff argues that there has been no evidence presented to support a claim that the Southeastern region "was in fact significantly 'busier' than the Midwest."  Plaintiff completely misstates Defendants' position.  Defendants' position is not that Plaintiff was terminated instead of Mellen because *the Southeast was busier than the Midwest*.  Rather, Defendants' position is that they chose to eliminate Plaintiff's rather than Mellen's position because the region of the

---

[3] To the extent Plaintiff argues that Defendants' gave Mellen her responsibilities to set her up for termination, other than pure speculation, Plaintiff presents no evidence indicating that such decision was based upon her gender or the fact that she was pregnant.

country that Plaintiff was responsible for, the Midwest, was *the least active of all the regions in March of 2003*.

The comments in Defendants' motion for summary judgment regarding the Southeast are relevant to late 2002, when they felt that area, and particularly Florida, required additional fuel management resources.  Mellen was offered his position to provide support services for the Southeast in December 2002 and Plaintiff was fired three months later.  Plaintiff simply does not argue nor does she point the Court to any evidence countering Defendants' statement that, at least as of March 2003, the Midwest was the least active region serviced by the Defendants. Accordingly, Plaintiff's challenge to Defendants' assertion is without support and thus without merit.

### c.    Plaintiff's Qualifications

Finally, Plaintiff argues that she was clearly better qualified than Mellen.[4]  Defendants assert that they chose to retain Mellen instead of Plaintiff because of Mellen's vast experience in the Southeast region.  Plaintiff objects to this statement on the ground that there is no documentary evidence to verify Mellen's previous experience in the Southeast.  The Court finds Defendants' assertion with regard to Mellen's experience to be conclusory and thus insufficient to entitle them to summary judgment on the issue of Plaintiff's qualifications.  *See TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002).

In support of her argument that she was clearly better qualified than Mellen, Plaintiff states that she was exceptionally familiar with much of the Southeast as evidenced by the fact that she supervised the region and had been directly responsible for much of the same plants and

---

[4] Apparently, Plaintiff feels that Mellen should have been terminated rather than her.  She makes no effort to compare herself to Elias.  Therefore, the Court will only address whether Plaintiff was clearly better qualified than Mellen.

areas assigned to Mellen.  In support of this assertion, Plaintiff refers the Court to page 16, lines 11-19 of her deposition.  The deposition testimony reads as follows:

> Q.    And how did you choose Mr. Mellen to be the one to be terminated?
>
> A.    Well, there was [sic] three people in the group.  And Mr. Elias's [sic] expertise was expertise I relied on more so than what Mellen's expertise was required.  He and I had an overlapping knowledge; and, in fact, his area was one that I could easily reabsorb since I had been responsible for it prior to having him in my group.[5]

Similar to the evidence supporting Defendants' assertion, Plaintiff's assertion also is conclusory and not supported by substantial evidence.  Plaintiff also refers the Court to page 62, lines 17-21.  Upon reviewing the deposition testimony referenced by this citation, the Court notes that such testimony does not address Plaintiff's experience in the Southeast region.

Plaintiff also argues that she was "more qualified" than Mellen because she was promoted to the Director position in 2001 and had supervisory authority over and greater responsibility than both Elias and Mellen.  Plaintiff further asserts that the fact that Defendants decided to eliminate Mellen in August 2002, indicates that the only credible basis for this action is that Defendants did not feel Mellen's skills were as valuable as Plaintiff's.  The Court finds such statements to consist of pure speculation.  Such evidence is insufficient to sustain her burden of showing that she was clearly better qualified than Mellen.

Additionally, Plaintiff states that there is no question that her "documented skills and breadth of knowledge in wide [sic] geographic area, as well as her work on a broad range of projects" make her clearly better qualified than Mellen.  The relevant question, however, is not whether she had worked on a broad range of projects or whether she had knowledge in a wide

---

[5] Plaintiff's Response, Exhibit 1, Deposition of Lisa Norwood, pg. 16, lines 11-19.

geographic area, but rather whether she had more experience than Mellen in the Southeast region.  The Defendants argue in their motion for summary judgment that Plaintiff was not clearly better qualified than Mellen to handle acquiring fuel for the Southeast power plants because Mellen had vast experience in the Southeast region.

Plaintiff cites evidence indicating that she worked on a project involving Tennessee and also that she was evaluating flexibility in the "southern region."[6]  She also refers the Court to her Current Assignment Summary/Status report dated January 8, 2003.[7]  This one page document seems to reflect that Plaintiff worked on a project or projects in Louisiana.[8]  Plaintiff also refers the Court to the work experience section of her resume which indicates that she has experience in Tennessee and Kentucky.[9]  Though the Court could infer that Louisiana, Tennessee, and Kentucky are states within the region Defendants' characterize as the Southeast, the Court is reluctant to do so without supporting evidence.  Neither the Plaintiff nor Defendants have referred the Court to evidence indicating which states comprise Defendants' Southeast region. Additionally, as stated above, Plaintiff has made no effort to compare her experience in these states with Mellen's.  Thus, Plaintiff's proffered evidence does not demonstrate that she is clearly more qualified than Mellen to serve Defendants' Southeast region.

Finally, Plaintiff compares her resume to Mellen's and cites the "stark difference" in experience between her and Mellen.  Plaintiff is entitled to use comparative evidence to prove

---

[6] *Id.* at 55-56.

[7] *Id.,* Exhibit 4, Norwood's Current Assignment Summary/Status report dated January 8, 2003.

[8] *See id.*

[9] *Id.*, Exhibit 8, Personnel Files.

15

that she was "clearly better qualified" than Mellen.  In response to Plaintiff's discovery request, Defendants produced the personnel file for Mellen.  However, the first page of Mellen's resume was never produced.  Though Plaintiff's counsel later requested a copy of the first page from Defendants' counsel, Plaintiff alleges that she has never received it.  The second page of Mellen's resume indicates that he was a restaurant manager until at least October 1994.  The evidence also reveals that Mellen has a Bachelor's degree with a focus in economics.  At the time of her termination, Plaintiff had been working in the energy field since 1991.  She also has an MBA.  The Court has no knowledge of the date Mellen began working in the energy field. The Court deems it inequitable to hold the Defendants' failure to produce the requested first page of Mellen's resume against Plaintiff.  Accordingly, the Court concludes that Plaintiff has satisfied her burden of demonstrating that she is clearly better qualified than Mellen. *Bodenheimer v. PPG Industries, Inc.*, 5 F.3d 955, 959 (5th Cir. 1993) (noting that a genuine issue of material fact exists when evidence shows the plaintiff was "clearly better qualified" than employees who were retained).

### d.    Salary Levels

In a footnote, Defendants state that in deciding who to terminate in the Houston office, they took into account the fact that Plaintiff's salary was the highest among the individuals working in the Houston office.  Plaintiff responds in a footnote that, though her salary was higher than either Mellen's or Elias', she was the lowest paid of the three fuels group directors. However, since Defendants determined that the task of acquiring fuel for their fleet of power plants could be accomplished with just two individuals in the Houston office instead of three, the higher salaries of the fuels directors in other offices provides little support for Plaintiff's pretext

argument.[10]

B.     Negligent Supervision and Training Claim

Plaintiff has filed a negligence claim against Defendants alleging that they were negligent in failing to provide and manage a non-discriminatory work environment, failing to adequately train their employees concerning federal anti-discrimination laws, and failing to adequately train and supervise their employees generally.  Defendants have moved for summary judgment on Plaintiff's negligence claim on the ground that this claim is barred by the exclusivity provisions of the Texas Workers' Compensation Act, § 408.001 of the Texas Labor Code ("TWCA").

The TWCA provides the exclusive remedy against an employer for an employee covered by workers' compensation insurance who is injured in the course of her employment.  *See* TEX. LAB. CODE § 408.001.  In this case, Plaintiff's allegations are based upon failing to provide a non-discriminatory work environment and failure to train employees.  These allegations address conduct in the course of employment.

Defendants have presented evidence that Plaintiff was hired and employed by Calpine Central, L.P. ("Calpine Central") and that this entity maintained workers' compensation insurance for its employees at all times during the Plaintiff's employment.  Plaintiff argues, however, that her claims are still viable because documentation suggests that at the time of her discharge she was employed by Calpine Energy Services, L.P. ("CES"), and that there has been no evidence presented that this entity is a workers' compensation subscriber.[11]  In support of her

---

[10] The Court has no knowledge as to whether the other two fuels group directors, Mike Pettit and Colin Coe, worked in the Houston office.  The Court's determination that these two directors did not work in the Houston office is deduced from the fact that they were not listed among the three employees working in the Houston office at the time Plaintiff was fired.

[11] Defendants' Motion for Summary Judgment ("Motion"), Exhibit A, Declaration of Paul Posoli.

argument, Plaintiff refers the Court generally to Exhibits 1, 2, and 5 attached to her Response.

Exhibit 5 is a letter from Marc Dickson, CES' Human Resources Director, to an investigator

with the Equal Employment Opportunity Commission.  The letter states that when Plaintiff was

hired she reported to Calpine's Central Region Office ("CRO").  It does not say which Calpine

entity hired the Plaintiff.  However, it does state that the "Fuels group" was transferred from

Calpine Corporations' CRO to the CES organization.  Based upon its review of Exhibit 5, the

Court finds a material question of fact as to whether Plaintiff was employed by Calpine Central

or CES at the time of the events leading to her termination.  The Court also finds a material

question of fact as to whether CES maintained workers' compensation insurance for its

employees.  *Cf. Jones v. Alcoa, Inc.*, 339 F.3d 359, 365 n. 8 (5th Cir. 2003), *cert. denied*, 540

U.S. 1161, 124 S. Ct. 1173 (2004).  Accordingly, Defendant is not entitled to summary judgment

on Plaintiff's negligence claim.

### C.      Intentional Infliction of Emotional Distress

Finally, Defendants move for summary judgment on Plaintiff's claim for intentional

infliction of emotional distress ("IIED").   Under Texas law, intentional infliction of emotional

distress requires proof (1) that the defendant acted intentionally or recklessly, (2) that the

defendant's conduct was extreme and outrageous, (3) that the defendant's actions caused the

plaintiff emotional distress, and (4) that the emotional distress suffered by the plaintiff was

severe.  *GTE Southwest*, 998 S.W.2d at 611.  To be extreme and outrageous, conduct must be "so

outrageous in character, and so extreme in degree, as to go beyond all possible bounds of

decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Id.*

(quoting *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993).  The Fifth Circuit has held that

when an intentional infliction of emotional distress claim is made, "[l]iability does not extend to

mere insults, indignities, threats, annoyances, or petty oppressions." *Ugalde v. W.A. McKenzie Asphalt Co.*, 990 F.2d 239, 243 (5th Cir.1993)*; see also Tex. Farm Bureau Mut. Ins. Cos. v. Sears*, 84 S.W.3d 604, 606 (Tex. 2002) (conduct that is merely insensitive or rude is not extreme and outrageous conduct).

Plaintiff argues that Defendants' conduct towards her and particularly their decision to terminate her while she was still on pregnancy leave was extreme and outrageous in character, and so extreme in degree as to go beyond all possible bounds of decency and enter the realm of "atrocious and utterly intolerable." Plaintiff argues that Defendants' human resources manager notified her by telephone while she was still out on maternity leave, recovering from a difficult delivery. Plaintiff reported that she was distressed by Defendants' conduct and suffered headaches, sleeplessness, and family dysfunction.[12] The facts alleged by no means rise to the level of extreme and outrageous conduct.

Therefore, there is nothing to raise her claim above the level of the mere distress resulting from her termination. A claim for intentional infliction of emotional distress resulting from the mere termination of employment does not rise to the level of "extreme and outrageous" conduct under Texas law. *See Taylor v. Houston Lighting & Power Co.*, 756 F. Supp. 297, 301 (S.D. Tex. 1990) (holding that termination alone is insufficient to state a claim for intentional infliction of emotional distress); *see also Southwestern Bell Mobile Sys., Inc. v. Franco*, 971 S.W.2d 52, 54 (Tex. 1998) (wrongful termination is insufficient to state a claim for intentional infliction for emotional distress). Accordingly, Plaintiff has not raised sufficient evidence to create a genuine issue of material fact as to the second element of her IIED claim. Defendants are entitled to

---

[12] Plaintiff's Response, Exhibit 1, Deposition of Lisa Norwood, pg. 69, lines 1-25.

summary judgment on that claim.

## Conclusion

For the reasons explained above, the Court DENIES Defendants' Motion to Strike

Exhibits (Dkt. #20) and GRANTS in part and DENIES in part Defendants' Motion for Summary

Judgment (Dkt. #16).

It is so ORDERED.

Signed this 6th day of September, 2005.

JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE